Mae Elizabeth Taylor is an inmate of the Atlantic County Hospital for the Insane. The writ in this matter is sued out by her husband, Bernard Taylor. The return is that the said Mae Elizabeth Taylor is detained by reason of a writ of commitment made by the Honorable William H. Smathers, judge of the court of common pleas of Atlantic county.
Upon call of the petitioner, the county produced the copy of the several papers and the proceedings. An examination of *Page 297 
the original request for the patient's commitment, showed that, although purporting to have been made by Bernard Taylor, and although there was the jurat of the officer certifying that said Taylor deposed to the truth of the facts set forth in the application, it was not physically signed by Taylor, or by any other applicant. Several other matters were claimed to be defects in the proceedings.
The patient, as well as the petitioner being in court and represented by counsel, and the county being represented, the parties proceeded to take testimony touching the insanity of the patient. After such testimony was taken, the case was continued from time to time until the 14th day of March, 1929, at which time the county produced and the petitioner offered in evidence a new application, certificate and notices, together with a commitment made by the said Honorable William H. Smathers, based upon an application made by one John P. Wilson, chief of police of the city in which the asylum is located. Many objections are made to these proceedings.
The law applicable to this case is found in 2 Comp. Stat. p.2646:
"Sec. 31a. Sec. 1. In all cases where any writ of habeascorpus shall be sued out by or on behalf of any person confined in any hospital for the insane or lunatic asylum in this state, the justice of the supreme court or other judicial officer who shall award such writ of habeas corpus shall assign a place and a short day for the return of such writ and shall require the person suing out such writ to give such notice as such justice or other judicial officer shall direct to the party or parties upon whose application such person was committed to said hospital or asylum of the issuance of such writ, and the time and place of its return, and upon the return thereof, the fact of the sanity or insanity of such person so detained shall be inquired into, and the party or parties who procured the commitment of such insane person to said hospital or asylum, as well as such insane person, and also the medical director or other head officer of said hospital or asylum wherein any such person is confined, shall be entitled to appear and be heard on the return of such writ. P.L. 1898 p. 231.
"Sec. 31b. Sec. 2. At the time and place to which such writ ofhabeas corpus shall be returnable, the parties aforesaid shall proceed to take testimony before the justice of the supreme court, or other judicial officer before whom any such writ ofhabeas corpus shall have been sued out, touching the insanity of the person so confined, and after the proofs shall be submitted on both sides and *Page 298 
counsel heard the justice of the supreme court or other judicial officer aforesaid shall find and determine whether such person in whose behalf said writ of habeas corpus was sued out, is sane or insane; and no person so confined shall be discharged by the said justice of the supreme court, or other judicial officer granting the said writ, unless he shall find such person to be sane. P.L. 1898 p. 231."
The detention was made by virtue of an order in a proceeding before a legal tribunal and is therefore that due process of law required in the fourteenth amendment to the constitution of the United States, which provides that no state "shall deprive any person of life, liberty or property without due process of law."Allgor v. New Jersey State Hospital, 80 N.J. Eq. 386.
It follows, therefore, that this court is bound by that portion of the statute above recited which reads:
"No person so confined shall be discharged by * * * the judicial officer granting the said writ unless he shall find such person to be sane."
This the court cannot do, as the testimony of the physicians, as well as the conduct of the patient while in the courtroom, is convincing that she is not sane.
"This statutory proceeding is designed, manifestly, to enable one restrained of his liberty for a reason, which, in its inception, may properly result in his commitment and detention so long as the cause thereof subsists, to show by satisfactory proof that the superinducing cause of his detention no longer exists, and that he is therefore entitled to his liberty. When the petitioner's status of mentality has been adjudged and determined, the statutory power conceded in such a situation is exhausted." In re Streeper, 92 N.J. Eq. 653.
Although this court is without jurisdiction to determine the legality of the form of proceedings, of the notices, the service thereof, and of the insufficience of proof thereof, the patient, and the petitioner are not without relief.
Any attack he or she may desire to be made thereon, saving only the inquiry as to the sanity or insanity of the patient, should be made to the judge making the commitment. Allgor v. NewJersey State Hospital, supra. *Page 299